Filed 6/5/24  P. v. Flores CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KEANI ISALYN FLORES,<br><br>    Defendant and Appellant. | D082150<br><br><br>(Super. Ct. No. SCE403705) |

APPEAL from a judgment of the Superior Court of San Diego County, Daniel G. Lamborn, Judge.  Affirmed.

Lara Gressley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Anne Spitzberg, Deputy Attorneys General, for Plaintiff and Respondent.

Keani Isalyn Flores pled guilty, as relevant here, to assault with a deadly weapon on a peace officer (Pen. Code, § 245, subd. (c); count 1) and assault by means likely to produce great bodily injury (§ 245, subd. (a)(4);

count 2).  She also admitted to personally inflicting great bodily injury (§ 12022.7(a).)  Following a bench trial, the court found three aggravating factors true beyond a reasonable doubt as to both counts.  The court sentenced Flores to the middle term for count 1 and imposed a consecutive term for the enhancement.

On appeal, Flores claims (1) insufficient evidence supported one of the aggravating factors, (2) the trial court impermissibly used the fact of great bodily injury to impose both the middle term and the enhancement, and (3) to the extent any claim is forfeited, her trial counsel provided prejudicially ineffective assistance.

We conclude (1) substantial evidence supported the trial court's finding that Flores acted with a high degree of callousness and (2) Flores forfeited any challenge to dual use of facts due to her counsel's failure to object on that basis.  Further, given the existence of multiple aggravating factors and the trial court's statements during sentencing, it is not reasonably probable Flores would have obtained a more favorable sentence had her attorney so objected.  We thus affirm.

I.

In 2020, El Cajon Police Department officers responded to a vehicle blocking a road.  Flores was sleeping in the passenger seat, and her codefendant was asleep in the driver's seat.  After contact, the codefendant began driving away at high speed.  One officer, N.C., thought Flores needed help, so he tried to get inside the vehicle to put it in park.  N.C. held onto the passenger-side windowsill until he fell, enduring lasting physical and brain injuries.

Flores pled guilty to counts 1 and 2 and admitted to personally inflicting great bodily injury on N.C.  After she waived her right to a jury

trial on the aggravating factors, the trial court heard testimony from witnesses and viewed videos and photographs. Flores' counsel flagged the potential for "dual use" of the fact of great bodily harm and indicated her intent to raise the issue at sentencing. The prosecutor responded by asking the court "to make a finding specifically as this relates to the high degree of cruelty, viciousness, or callousness" to avoid dual use issues.

As to both counts, the court found true beyond a reasonable doubt three aggravating factors: (1) "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness" (Cal. Rules of Court (Rules), rule 4.421(a)(1)); (2) N.C. "was particularly vulnerable" (Rules, rule 4.421(a)(3)); and (3) Flores' "violent conduct . . . indicates a serious danger to society" (Rules, rule 4.421(b)(1)). As to the first factor, the court specifically found Flores acted with "a high degree of cruelty, viciousness, or callousness," as shown "in that surveillance tape," in which Flores "slowly pluck[ed N.C.'s] hands off the windowsill while the car was going at a high rate of speed." As to the second, the court found that, while N.C. was an armed and trained police officer, he was particularly vulnerable because, as evidenced in the "very persuasive" photographs, "he was hanging from the edge of a window in a car that's driving at a high rate of speed."

At the sentencing hearing, the trial court noted it had read and considered the probation report, the People's sentencing memorandum, and Flores' sentencing brief and statement in mitigation. It said this was a "particularly . . . difficult," "sad, tragic case" and acknowledged Flores' "tough background" and the "tough things" she had endured. Yet the court also noted N.C. "will never be the same" and that "the consequences to [him] are life-long and dramatic."

The court denied probation based on "[t]he extreme callousness, violence, and great bodily injury" inflicted on N.C. It was "satisfied that [section] 1170(b)(6) does come into play," given "the abuse . . . Flores had suffered throughout her life." It nonetheless determined the aggravating circumstances outweighed the mitigating circumstances "such that the imposition of the low term is contrary to the interest of justice." The trial court did not specify the relevant aggravating and mitigating circumstances, although it noted it "considered all of the facts," including the bench trial and "[e]very page and every letter" submitted. The trial court then chose to sentence on count 1 as the "most descriptive of the crime, the victim and the injuries." It declared the aggravating factors "very compelling" and found the upper term "certainly justified." However, the mitigants persuaded the court the middle term would achieve justice. It declined to stay the punishment on the section 12022.7(a) allegation "because the injuries in this case are so dramatic" and "life long." The trial court thus sentenced Flores to the four-year middle term and a consecutive three-year enhancement for count 1, and it stayed the sentence on count 2.

Before the court sentenced Flores, her counsel argued that if the court imposed the enhancement, it could not use "those same facts . . . to impose the upper term." Yet counsel did not object during or after the court's statement of reasons or pronouncement of sentence.

II.

A.

Flores first contends the trial court's finding of callousness was "an improper basis for the court's sentencing decision" because there is insufficient evidence that she plucked N.C.'s hands from the vehicle's windowsill. She does not appear to dispute that such an act would be callous.

4

We agree with the People that substantial evidence supports the court's finding.

Challenges to the sufficiency of evidence generally are not forfeited, and the People do not assert forfeiture. (*People v. Butler* (2003) 31 Cal.4th 1119, 1039.) While we independently review the surveillance footage and photographs relied on by the trial court and transmitted to this court at Flores' request (*People v. Ayon* (2022) 80 Cal.App.5th 926, 943-944), we otherwise review the record in the light most favorable to the trial court's judgment to determine if substantial (i.e., reasonable and credible) evidence would allow a reasonable trier of fact to find Flores guilty beyond a reasonable doubt (*People v. Brooks* (2017) 3 Cal.5th 1, 57).

We conclude the record discloses such evidence. First, Exhibit 3, the videos, and Exhibits 31 through 36, still frames taken from the videos, support the reasonable inference that Flores forcibly disconnected N.C.'s right hand from the vehicle's windowsill. In Exhibit 31, both N.C.'s hands are gripping the windowsill, and Flores' hand is visible just above N.C.'s right hand. In Exhibits 32 and 33, N.C.'s right hand is disconnected from the vehicle, and more of Flores' hand is visible at the approximate point where N.C.'s hand had just been. As the People claim, this supports the reasonable inference that Flores consciously used her hand to remove N.C.'s.

We agree with the People that other evidence corroborates this. While N.C. has no recollection of the incident given his brain injury, a sergeant who was at the hospital testified that, upon waking, N.C. "said she was peeling [his] fingers off of the door." The investigating detective also testified that Flores, during an interview while in detention, admitted she "possibly" peeled N.C.'s hands off the car. Even if the trial court did not expressly rely on this

5

evidence in making its finding, there is also no indication that the court discredited this evidence.

Collectively, this is sufficient reasonable and credible evidence that Flores intentionally plucked or pushed N.C.'s fingers from the windowsill, even if she did not "slowly" do so, for a reasonable trier of fact to conclude beyond a reasonable doubt that Flores acted with a "high degree of cruelty, viciousness, or callousness." (Rules, rule 4.421(a)(1).)

B.

Flores next contends the trial court erred in using evidence of great bodily injury to impose both (1) the middle term as opposed to the low term and (2) the section 12022.7(a) enhancement. Flores acknowledges that while her counsel raised concerns about the potential for improper dual use of facts before the court stated its reasoning and sentence, she did not specifically object after; thus, should we conclude this issue is forfeited, she urges us to find her counsel provided prejudicially ineffective assistance of counsel.

1.

We agree with the People that Flores forfeited her sentencing challenge. "[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 356.) This includes "cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons." (*Id.* at p. 353.)

As Flores acknowledges, her counsel's failure to specifically identify and object to the evidence she believed to be an improper dual use of facts deprived the People and the trial court of the opportunity to cure any defect.

6

(*People v. Partida* (2005) 37 Cal.4th 428, 434.) Because Flores' counsel's passing references for the court to be mindful of dual use of facts were insufficient to preserve this issue for appeal, we deem it forfeited. (See *People v. De Soto* (1997) 54 Cal.App.4th 1, 9 ["cursory" objection to "use of a fact constituting an unidentified element of the offense to aggravate and enhance" term deemed forfeited].) We are not convinced by Flores' claim that her counsel's sentencing brief, which did not address dual use, and argument of the mitigating circumstances at sentencing somehow preserved this issue. And to the extent Flores, citing no record evidence and a single case without explanation or legal argument, claims further objection was futile, we disagree.

2.

We also conclude on this record that Flores fails to show ineffective assistance of counsel. To establish ineffective assistance of counsel, the defendant must show both that: (1) "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms," and (2) "there is a reasonable probability"—one that "undermine[s] confidence in the outcome"—"that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694.) "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Here, the record is silent as to whether Flores' counsel had any tactical purpose for her failure to object to the trial court's alleged dual use of facts.

7

She was not asked to provide a reason. As the People note in their brief, however, it is conceivable trial counsel made no such objection because she did not think the trial court improperly dually used the same fact, given the trial court (1) selected the middle rather than the upper term; and (2) focused, for purposes of the aggravating factor, on the "cruelty, viciousness, or callousness" of Flores' acts rather than the bodily harm she caused. The record thus provides no basis to conclude that Flores' counsel's failure to object was objectively unreasonable. (*People v. Mickel* (2016) 2 Cal.5th 181, 198 (*Mickel*).)

Even assuming deficient performance, Flores fails to demonstrate prejudice by "showing a reasonable probability that, but for counsel's deficient performance, the outcome" of sentencing would have been more favorable. (*Mickel*, *supra*, 2 Cal.5th at p. 198.) While the court repeatedly praised Flores' counsel's "excellent sentencing brief and statement of mitigation," which demonstrated she had "gone to the ends of the Earth to find material to support her positions," the court nonetheless concluded the "many letters of support"; the "psychiatric report" evidencing childhood and partner abuse and relevant diagnoses; and Flores' efforts in custody "to better herself" did not outweigh the aggravating factors.

We disagree with Flores' claim that, in making that determination, the court focused solely on N.C.'s injuries and Flores' allegedly inadequately evidenced callousness. The trial court was clear that it believed the "aggrava[ ]ting *circumstances*" outweighed the mitigating ones, having "considered all of the facts," both from the bench trial and the parties' submissions. (Italics added.) It found the "aggrava[ ]ting *factors* very compelling" and believed the upper term was "certainly justified." (Italics added.) Although Flores contends otherwise, the trial court did not expressly

8

reference N.C.'s injuries in weighing the factors or deciding to impose the middle term; meanwhile, it imposed the consecutive enhancement expressly due to the "dramatic" and "life long" injuries N.C. endured. And during the bench trial, the court stressed why it found certain aggravants true beyond a reasonable doubt. For example, it "d[id] consider" N.C.'s vulnerability, demonstrated by the "very persuasive" pictures showing him hanging by his fingers from a fast-moving vehicle. Flores completely overlooks this aggravating factor in her briefing. The court also stressed the "high degree of cruelty, viciousness, or callousness" demonstrated by Flores in removing N.C.'s fingers from the vehicle.

These remarks demonstrate that, beyond N.C.'s grave injuries, the court considered additional aggravating factors in deciding the aggravants outweighed the mitigants and in imposing the middle term. Given the court's statements that the upper term was justified and that the aggravants were "compelling," it is not reasonably probable the court would have given Flores the low term had her counsel objected to the allegedly improper dual use of the fact of N.C.'s great bodily injury. As the People note, even a single aggravating circumstance can justify the upper term or a consecutive sentence. (*People v. Osband* (1996) 13 Cal.4th 622, 728-730.) Nor is it likely the court would have elected to stay the great bodily harm enhancement, given that, in concluding it was "not going to do that," it commented about

the "dramatic" and life-long nature of N.C.'s injuries.  Accordingly, we conclude Flores is not entitled to relief for ineffective assistance of counsel.

III.

We affirm.

CASTILLO, J.

WE CONCUR:


DATO, Acting P. J.


RUBIN, J.

10