Filed 12/20/24  P. v. Bruno CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C099699 |
| Plaintiff and Respondent, | (Super. Ct. No. 98F03946) |
| v. | |
| NATHAN CLAY BRUNO, | |
| Defendant and Appellant. | |

Defendant Nathan Clay Bruno was convicted in 1999 of attempted murder, assault with a deadly weapon, battery with serious bodily injury, and misdemeanor possession of a dagger.  In 2023, pursuant to Penal Code section 1172.75, the trial court recalled her sentence to dismiss a subsequently voided prior prison term enhancement.[1]  Defendant further moved the trial court to dismiss her prior strike convictions pursuant to *People v.*

---

[1] Further undesignated statutory references are to the Penal Code.

*Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) and section 1385. She now appeals from the resentencing, arguing the trial court abused its discretion in denying her *Romero* motion. Anticipating we would conclude defendant forfeited her claim on appeal, she alternatively argues defense counsel provided ineffective assistance of counsel. We disagree and will affirm the judgment.

## I. BACKGROUND[2]

A.      *Factual and Procedural History of 1999 Conviction*

In May 1998, the victim, J.B., was drinking beers with two other people at a table in a park. Defendant approached and "hover[ed] over" them. They asked defendant to leave and began arguing with defendant. Defendant and J.B. wrestled on the ground. J.B. walked away, but defendant grabbed J.B.'s hair with one hand and cut J.B.'s throat with the other. The cut, which damaged a nerve and severed small blood vessels, was approximately five inches long and half an inch deep. When J.B. raised his hand to stop defendant from cutting him again, defendant cut J.B.'s hand, severing tendons in his hand.

An amended information charged defendant with attempted murder (§§ 664/187, subd. (a)—count one) of J.B., assault with a deadly weapon (§ 245, subd. (a)(1)—count two), battery with serious bodily injury (§ 243, subd. (d)—count three), and misdemeanor possession of a dagger (former § 12020, subd. (a)—count four). The amended information alleged a prior strike conviction for assault with a deadly weapon (§ 245, subd. (a)) in 1982, a prior serious felony conviction and prior strike conviction for assault with a deadly weapon (§ 245, subd. (a)) in 1985, and a prior serious felony conviction for

_____

[2] We take portions of the factual and procedural background from the record in defendant's prior appeal in case No. C034540, which we incorporated at defendant's request.

2

assault with a deadly weapon (§ 245, subd. (a)(1)) in 1995.[3] The amended information also alleged defendant personally inflicted great bodily injury as to counts one, two, and three.

A jury found defendant guilty of all counts and found true all allegations of personal infliction of great bodily injury. During bifurcated proceedings, the trial court found true allegations defendant had sustained prior convictions for assault with a deadly weapon in 1982, 1985, and 1995.

B.      *Sentencing for 1999 Conviction*

At sentencing, the trial court stated it reviewed the probation report, which described defendant's personal and criminal history. Defendant's juvenile adjudications included: inhalation of toluene (§ 381) twice in 1980; assault by means of force likely to produce great bodily injury (§ 245, subd. (a)) in 1980, in which defendant kicked a victim; and assault with a deadly weapon (§ 245) in 1981, in which defendant stabbed a 14-year-old victim in the chest with a knife. In 1982, defendant suffered her last juvenile adjudication and first strike offense for assault with a deadly weapon when she chased the victim from a park while armed with a knife, causing the escaping victim to narrowly avoid being struck by a car. In 1985, defendant was convicted of her second strike for assault with a deadly weapon based on hitting the victim on the back of the neck and the back with a metal panel because the victim asked her to leave a club where she was disturbing the patrons. The report also included the following adult convictions: second degree burglary (§ 459) in 1989; possession of hypodermic syringes (Bus. & Prof. Code, § 4149) in 1991; and vehicle theft (Veh. Code, § 10851) in 1993. Defendant reported experimenting with marijuana and methamphetamine five years before she was convicted

---

[3] At sentencing, the trial court determined that the prior conviction in 1995 could not be used for the purposes of a prior strike or a prior serious felony conviction per the plea agreement in that case.

of the instant offenses and denied using any other controlled substances. She also denied suffering any serious psychological or psychiatric illnesses but reported taking medications "for nerves."

Defense counsel requested the trial court exercise its discretion to strike at least one of defendant's prior strike convictions. Defense counsel argued both the 1982 and the 1985 prior strike convictions were remote in time. Further, defense counsel asserted the court should consider defendant's mental health issues.

In denying defendant's *Romero* motion in the initial sentencing, the trial court found "disturbing" and "particularly brutal" that defendant had cut J.B.'s throat by pulling his head back, exposing his throat, and slitting it. The court recounted that in the 1982 prior strike conviction defendant had chased a victim through a park for no apparent reason, and in the 1985 prior strike conviction, she had struck a victim simply because the victim didn't want defendant in the same club. The court concluded, "What's disturbing about [defendant] is that [she] has a history for this kind of conduct" and "minor things can provoke [her]." The court sentenced defendant to the upper term of 27 years to life for count one and a consecutive three years for its attendant great bodily injury enhancement, a concurrent 100 days in jail for count four, a consecutive five-year term for a prior serious felony conviction, and a consecutive one-year term for a prior prison term (former § 667.5, subd. (b)).[4]

Defendant appealed, arguing defense counsel provided ineffective assistance of counsel in failing to request "expanded" jury instructions on eyewitness identification. A different panel of this court affirmed the judgment. (*People v. Bruno* (Apr. 27, 2001, C034540) [nonpub. opn.] [affirming judgment].)

---

[4] There is an amended abstract of judgment filed on May 4, 2001, modifying the sentence on count one to 25 years to life nunc pro tunc to July 26, 1999. The record does not indicate the basis for the modification.

4

*C.* *Resentencing*

In June 2023, the Department of Corrections and Rehabilitation identified defendant as someone eligible for resentencing pursuant to section 1172.75.[5] In the context of that resentencing, defendant again requested the court strike her prior strike. She asserted her age, participation in rehabilitative programs, and maturation during her 25 years in state prison placed her outside the spirit of the "Three Strikes" law. Defendant also argued the court should consider any mitigating factors, such as her learning disability, in considering her *Romero* motion. In addition to her *Romero* motion, defendant requested the court impose 25 years to life on count one, dismiss the prior prison term enhancement, and stay all remaining counts and enhancements. Defendant attached certificates of achievement and completion in rehabilitative and educational courses to her resentencing brief.

In response, the People argued the violence of the instant offense weighed against dismissing any of defendant's prior strike convictions. The People attached the probation report and records of over 20 rules violation reports during defendant's incarceration. Four of the violations involved fighting or mutual combat in 2000, 2007, 2011, and 2018. In the 2007 incident, defendant's cellmate alleged she tried to stab the cellmate with a pencil and caused a bloody abrasion on the cellmate's face. Clinical staff noted that though defendant had a mental disorder, it did not contribute to the violations. And although defendant had a low mental function score, the reports did not indicate whether it contributed to the violations either.

---

[5] Effective January 1, 2022, Senate Bill No. 483 (2021-2022 Reg. Sess.) added section 1172.75 (formerly § 1171.1) (Stats. 2022, ch. 58, § 12, eff. June 30, 2022), which requires that, subject to certain inapplicable exceptions, for any judgment including a prior prison term enhancement pursuant to section 667.5, subdivision (b), the trial court shall recall the sentence and resentence the defendant.

After reviewing the parties' briefs and the court file, which included the probation report, the original sentencing transcript, and the denial of defendant's original *Romero* motion, the trial court heard argument on defendant's new *Romero* motion. Defense counsel submitted on the briefing. Based on the transcript from the initial sentencing, the court found in the instant offenses, defendant grabbed the victim's hair, violently pulled back his head, and viciously sliced his throat, and in the prior strike offenses, defendant displayed "issues controlling anger" and a "violent tendency or streak." Additionally, defendant committed another serious and violent offense that was not used as a prior strike. Finding defendant "had a long history of extremely violent behavior," the court declined to strike any of her prior strike convictions.

The trial court then gave the parties another opportunity to speak before it pronounced the sentence. Defense counsel asked the court to consider defendant's childhood trauma and hardship as a transgender woman as mitigating factors and asked the court to strike or stay the enhancements. The court acknowledged defendant's successful completion of rehabilitative programs but stated her rule violations leading up to "the most recent serious violation" in 2018 outweighed any mitigating factors. The court specifically noted some rules violations involved possession of pills, manufacturing of alcohol, and "allegations of violence including an allegation of stabbing an inmate." The court found her coping mechanisms of self-medicating and fighting demonstrated she would be a danger to the public if she were released. Thus, the court declined to strike the five-year prior serious felony conviction enhancement.

The trial court sentenced defendant to 25 years to life on count one, plus a consecutive three years for its attendant great bodily injury enhancement and a consecutive five years for the prior serious felony conviction enhancement. The court struck the prior prison term enhancement imposed under former section 667.5, subdivision (b), and stayed all remaining counts and their attendant enhancements.

6

## II. DISCUSSION

On appeal,[6] defendant argues the trial court abused its discretion by failing to consider and adequately weigh relevant mitigating factors, and alternatively argues defense counsel provided ineffective assistance by failing to proffer evidence of all the mitigating factors. The People respond defendant has forfeited her claim on appeal, and regardless, the court did not abuse its discretion. We agree with the People that defendant forfeited her claim and further conclude she has not met her burden to establish ineffective assistance of counsel.

### A. *Forfeiture*

As an initial matter, we conclude defendant forfeited her claim on appeal because she did not argue the trial court's articulated reasons for denying her *Romero* motion were insufficient at resentencing. "[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 356.) This applies to claims the trial court cited insufficient or inapplicable reasons in support of its sentencing choices. (*Id*. at p. 353, fn. 16; accord, *People v. Scott* (2015) 61 Cal.4th 363, 406.) When the resentencing court addressed the *Romero* motion, defense counsel submitted on the briefing and then did not object to the denial of the motion on the basis of any mitigating factors. Rather, when the court gave defense counsel an opportunity to raise any issues before pronouncing the sentence, counsel raised other mitigating factors in support of dismissing or staying the enhancements. To avoid forfeiture, an objection

---

[6] To the extent defendant argues the provisions of section 1385, subdivision (c), apply to her prior strikes, she is incorrect. (*People v. Burke* (2023) 89 Cal.App.5th 237, 244 [§ 1385, subd. (c)'s "provisions regarding enhancements do not apply to the Three Strikes law"].)

7

must be "sufficiently specific" so as "to give the trial court a meaningful opportunity to correct any sentencing errors."  (*People v. De Soto* (1997) 54 Cal.App.4th 1, 8, 9.)

On appeal, defendant argues the trial court did not consider or adequately weigh the mitigating factors at resentencing.  However, because defense counsel did not object to the court's denial of the *Romero* motion with sufficient specificity to alert the court to clarify or reassess its sentencing choice, defendant has forfeited her claim on appeal.

B.      *Ineffective Assistance of Counsel*

Defendant contends she received ineffective assistance because her counsel failed to argue for and proffer evidence of all the mitigating factors she now identifies on appeal.  To establish constitutionally inadequate representation, the defendant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)  While defendant argues there was no tactical reason for defense counsel's failure, she does not argue there is a reasonable probability of a different result but for that failure.  A reviewing court may reject a claim of ineffective assistance of counsel without addressing both components if a defendant makes an insufficient showing as to either prong.  (*Id.* at p. 697.)  Here, we conclude defendant does not meet her burden to establish prejudice, and thus her claim of ineffective assistance of counsel fails.

To prove prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  (*Strickland v. Washington, supra*, 466 U.S. at p. 694.)  Prejudice must be a demonstrable reality established based on facts in the record, not simply speculation as to the effect of the errors or omissions of counsel.  (*People v. Williams* (1988) 44 Cal.3d 883, 933; *People v. Montoya* (2007) 149 Cal.App.4th 1139, 1151.)  When a defendant challenges a sentence, the question is "whether there is a reasonable probability that, absent the errors, the [court] . . . would have concluded that the balance of aggravating and mitigating circumstances" did not warrant the sentence

8

imposed.  (*Strickland, supra*, at p. 695.)

When deciding whether to dismiss a prior strike allegation, a trial court determines whether the defendant falls outside the spirit of the Three Strikes law.  (*People v. Williams* (1998) 17 Cal.4th 148, 161.)  To make this determination, the trial court considers (1) the nature and circumstances of the present felony, (2) the nature and circumstances of the prior strike offenses, and (3) the particulars of the defendant's background, character, and prospects for the future.  (*Ibid*.)  We review a decision declining to dismiss a prior strike allegation for abuse of discretion and, in the absence of an affirmative record to the contrary, we presume the trial court considered all relevant factors.  (*People v. Carmony* (2004) 33 Cal.4th 367, 375, 378.)

Here, the record indicates the trial court was aware of and considered the pertinent factors, which included the mitigating factors defendant asserts weighed in favor of striking her prior strikes.  The documents the court stated it had reviewed—including the original sentencing transcript, the probation report, and the parties' briefs—indicated defendant's youth at the time of the 1982 prior strike, the remoteness of the 1985 prior strike, her mental illness, her learning disability and low functioning, her history of drug use, completion of rehabilitative programs, and that her most recent rule violation in custody occurred approximately five years previously.  Accordingly, we presume the trial court considered these mitigating factors, regardless of defense counsel's failure to specifically raise them at sentencing, and the record does not rebut that presumption.

Further, those same documents included a list and description of defendant's "long history of extremely violent behavior," which the trial court referred to when it denied her *Romero* motion.  Including the offense that led to her 1999 conviction, defendant had four convictions based on violently assaulting other people, three of them involving use of a deadly weapon.  While in custody, defendant continued to engage in fighting and attempted to stab another inmate.  Although defendant received mental health services while incarcerated, the administrative rules violations did not indicate defendant's mental

9

disorder or her low mental functioning contributed to the violations.  Given defendant's history of violence, the court did not abuse its discretion in finding she fell within the spirit of the Three Strikes law despite any mitigating factors.  Because we conclude the court did not err in denying her *Romero* motion, defendant has not shown she was prejudiced by defense counsel's failure to specifically raise and provide evidence of the mitigating factors.  Thus, defendant's claim for ineffective assistance of counsel fails.

## III.  DISPOSITION

The judgment is affirmed.

/S/

RENNER, J.

We concur:

/S/

EARL, P. J.

/S/

BOULWARE EURIE, J.